UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO.: _____

LAURA GOODLOE, as Personal
Representative of the Estate of RICHARD
J. PUCHALSKI,

      Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES,
LTD., A Liberian Corporation,

      Defendant
_____/

## COMPLAINT

COMES NOW the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, by and through undersigned counsel and sues the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, and alleges as follows:

### GENERAL ALLEGATION

1.    This is an action for damages which exceeds Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to *28 USC §1332.*

2.    The Plaintiff, LAURA GOODLOE, is the daughter of RICHARD J. PUCHALSKI and the duly appointed Personal Representative of the Estate of RICHARD J. PUCHALSKI ("MR. PUCHALSKI"), deceased. Attached hereto and made a part hereof as Exhibit "A" is a copy of the Letters Testamentary issued on May 25, 2017, by the Circuit Court

1

of Kenosha County, Wisconsin.

3.     At all times material the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, was and is a resident and citizen of the State of Illinois.  Her mother, Cheryl Puchalski, is Mr. Puchalski's widow and survivor.  She is a citizen and resident of Wisconsin.  Clifford Puchalski is Mr. Puchalski's son, and a citizen of Texas.

4.     At all times material, the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, hereafter referred to as "RCCL", was and is a foreign corporation with its principal place of business in Miami-Dade County, Florida.

5.     At all times material, Jane Doe, R.N., was a nurse employee, or agent of the Defendant, RCCL, and was at all times material acting within the scope and course of her employment or agency with RCCL.

6.     At all times material, Dr. Amanda Saunders, a citizen of South Africa, was an employee or agent of the Defendant, RCCL, as its ship's physician and was at all times material acting within the scope and course of her employment or agency with RCCL.

7.     At all times material, the Defendant, RCCL, was the owner and/or operator of the cruise ship EXPLORER OF THE SEAS.

8.     On July 31, 2016, the decedent, MR. PUCHALSKI, was a passenger on the EXPLORER OF THE SEAS, which was docked in the port of Juneau, Alaska.

9.     On that date, MR. PUCHALSKI presented to the ship's Infirmary at or around 10:00 a.m.

10.     MR. PUCHALSKI presented to the clinic with shortness of breath.  He was evaluated by Dr. Saunders who ordered an EKG which revealed a "septal infarction, age

undetermined."   The ship's physician prescribed and dispensed some medications, including intravenous Metoprolol to MR. PUCHALSKI.  The ship's physician did not contact any family members or keep MR. PUCHALSKI for further testing or evaluation, or, as she should have done, immediately transfer him to a hospital ashore.

11.     Relying on the advice of the ship's medical personnel, MR. PUCHALSKI returned to his cabin rather than seeking further care ashore at a hospital.

12.     Approximately a half-hour after MR. PUCHALSKI returned to his cabin, his son (Clifford Puchalski) returned to the cabin and found his father sitting on his bed.   MR. PUCHALSKI appeared dizzy and disoriented.  MR. PUCHALSKI rose to go to the bathroom, and collapsed.  Clifford called the ship's emergency number.  Approximately, 10 minutes later two nurses arrived.  They were unable to lift MR. PUCHALSKI or perform any medical treatment to him.  Thereafter, the ship announced an emergency code over the intercom, and additional ship personnel responded to the cabin.  After unsuccessfully attempting to revive MR. PUCHALSKI, he was transported to the RCCL on-board medical center.

13.     When MR. PUCHALSKI arrived at the ship's medical center there was an additional significant delay before he was transferred ashore.

14.     Finally, late in the afternoon, the ship's physician ordered a transfer to Bartlett Regional Hospital ashore in Juneau for further care and treatment.  After assessment there he was airlifted to an ICU in Anchorage.

15.     By the time MR. PUCHALSKI arrived at the ICU in Anchorage, Alaska during the early evening hours, his condition had deteriorated to the extent that he was not salvageable. He expired on August 4, 2016.

16.     RICHARD J. PUCHALSKI is survived by his widow, Cheryl Puchalski, who was

3

dependent upon him for financial support and services until his death.  He is also survived by his

daughter, LAURA GOODLOE, and son CLIFFORD PUCHALSKI.

## COUNT I: NEGLIGENT MEDICAL CARE AND
## TREATMENT VIA EMPLOYEES OR ACTUAL AGENTS

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1

through 16 as though fully set forth herein, and further alleges as follows:

17.    The Defendant owed a duty to RICHARD J. PUCHALSKI to provide prompt

and appropriate medical care upon his presentation to the ship's infirmary on July 31, 2016, and

thereafter when he collapsed in his cabin.

18.    The Defendant, RCCL, by and through the acts of its employees or agents,

including medical personnel, was negligent, in one or more of the following ways:

(a)    in failing to properly assess the condition of RICHARD J. PUCHALSKI;

(b)    in failing to timely diagnose and appropriately treat the patient;

(c)    in failing to order appropriate diagnostic tests to further assess the degree
of injury;

(d)    in failing to obtain consultations with appropriate specialists;

(e)    in failing to properly monitor the patient;

(f)    in failing to evacuate the patient from the vessel for further care in a
timely manner;

(g)    in deviating from the standard of care for patients in MR. PUCHALSKI's
circumstances who had suffered a septal infarction.

(h)    In prescribing and dispensing counter-indicated medicines which
proximately caused MR. PUCHALSKI's death.

19.    RCCL acknowledged through its hiring and holding out of its medical personnel,

including Dr. Saunders, and all nurses, that they acted for RCCL; Dr. Saunders and the nurses

4

manifested the acceptance of that undertaking by providing care to RCCL's passengers in RCCL's medical center, and RCCL controlled or had the right to control the medical personnel's actions, as more fully set forth *infra* and *supra*.

20.     RCCL directly paid the medical personnel for their work in the ship's medical center.

21.     The medical center was created, owned and operated by RCCL.

22.     RCCL represented to immigration authorities and passengers that the medical personnel (including Dr. Saunders) were members of the ship's crew.

23.     RCCL hired and had the right to fire its medical personnel, including Dr. Saunders.

24.     As a direct and proximate result of the negligence of the Defendant through its employees/agents, as described above, the Plaintiff died.

25.     Had RICHARD J. PUCHALSKI received the appropriate care and treatment, he more likely than not would have survived.

26.     As a result of the negligence of the Defendant, as heretofore described, the Estate of RICHARD J. PUCHALSKI has become obligated to pay significant medical bills and other expenses.

27.     As a result of the negligence of the Defendant, as heretofore described, Cheryl Puchalski, the widow of the decedent, has lost his pension, his social security, medical insurance, and the value of his services and incurred expenses for medical care, funeral services and interment.

WHEREFORE, the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, demands judgment against the Defendant, ROYAL

CARIBBEAN CRUISES, LTD., a Liberian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and MR. PUCHALSKI's survivors, Cheryl Puchalski, Laura Goodloe, and Clifford Puchalski, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

**COUNT II: NEGLIGENCE (VICARIOUS LIABILITY OF RCCL BASED UPON APPARENT AGENCY)**

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

28.     This is an action for negligent medical treatment of MR. PUCHALSKI by the shipboard physicians and medical staff. The Defendant RCCL is vicariously liable for the negligence of its shipboard medical personnel including those persons who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The cruise line is vicariously liable for the negligence of the shipboard physicians and medical staff. This ultimately is based on the fact that the physicians and medical staff are employees or actual agents of the cruise line. Therefore, under respondeat superior and actual agency the cruise line is liable for the negligence of the physicians and medical staff.

29.     Dr. Amanda Saunders was an employee and actual agent of RCCL on the date of the subject incident. This is an action based on the agency relationship between RCCL and the shipboard physicians and medical staff in which the physicians and medical staff acted and act as the actual agents of RCCL in providing medical services, medical supplies and medications to RCCL's passengers on a regular basis. RCCL was negligent by and through the acts of its

employees or agents. RCCL employed the shipboard physicians, including Dr. Saunders, and the medical staff aboard the subject ship to provide medical and emergency medical treatment to its crew and thousands of passengers aboard its ships. The Defendant, as owner of the ship and its medical center, is liable to its passengers for medical negligence of its medical employees. RCCL represented to RCCL's passengers that the shipboard physicians and medical staff would provide RCCL passengers a safe and comfortable environment for cruise passengers and that the medical center would meet or exceed the standards established by the Cruise Lines International Association (CLIA) and the American College of Emergency Physicians (ACEP). The shipboard physicians and medical staff consented and accepted this relationship and in exchange provided payment, and benefits including senior officer status, round-trip transportation from residence to ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, and daily housekeeping services. RCCL maintained and exercised control over the shipboard physicians and medical staff's actions and conduct aboard the ship and the shipboard medical center. This is evidenced by the fact that RCCL maintained an ongoing relationship with the shipboard medical physicians and medical staff whereby RCCL exclusively provided its passengers for medical services, controlled the stocking of the medical center, offered RCCL's Cruise Vacation Protection Plan for reimbursement of medical related expenses, controlled the medical center's hours of operation, allowed and required the ship's physicians to operate and provide services out of the ship's Medical Center, required the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies, and controlled termination of the employment relationship between the shipboard physicians and medical staff with RCCL.

30.     The Defendant cruise line and the onboard doctor and medical staff owed a duty to provide medical care and treatment to its passengers which was proper and reasonable under the circumstances and within the standard of care. These duties arise in this case from the law and from the fact and circumstances of this cruise which includes but is not limited to the following: (a) the Defendant cruise line's duty under the General Maritime Law to provide its passengers with a voyage and a ship which are reasonably safe or reasonably safe under the circumstances; (b) the Defendant cruise line's representations in its advertising and literature that the cruise line provides a medical Center; (c) the Defendant cruise line's holding out the ship's physicians and medical staff as its employees and/or actual agents; (d) the Defendant cruise line's voluntary undertaking in this case to provide medical care and treatment to the Plaintiff; (e) the cruise ship is in fact isolated on the open seas for periods of time and thus the only medical care reasonably available to the passenger is onboard the ship; (f) the cruise line and this ship caters to U.S. citizens who are used to and expect first world medical care; (g) the cruise line markets this cruise as safe and secure for its passengers.

31.     The Defendant's shipboard physicians and medical staff's unfitness and incompetence to provide adequate medical services caused Plaintiff's death. The Defendant's onboard physicians and medical staff failed to administer the medical care and treatment which was necessary and reasonable and which complied with the standard of care for the treatment of the Plaintiff herein. The Defendant cruise line and the shipboard physician and medical staff, including Dr. Saunders, breached and violated the duties it owed toward the Plaintiff herein by its actions and conduct. The Defendant's actual agent, employee, and/or servant, Dr. Saunders and the onboard medical staff, failed to properly assess Plaintiff's medical condition and correctly diagnose Plaintiff's medical condition. The shipboard physicians, including Dr.

8

Saunders, and the medical staff failed to conduct a thorough examination of MR. PUCHALSKI. Dr. Saunders failed to recognize and properly treat the Plaintiff's medical condition. Dr. Saunders and the medical staff failed to initiate, request, and/or advocate for prompt medical evacuation of the Plaintiff from the cruise ship to a shore based medical center capable of handling the Plaintiff's medical condition on July 31, 2016. As a direct result of the shipboard physician and medical staff's failings, MR. PUCHALSKI sufferd a PEA cardiac arrest which resulted in his death.

32.     The Defendant cruise line knew or should have known the limitations in terms of quality and competency of medical professionals onboard, in terms of the equipment, supplies and medications and in terms of the ability of that system onboard to cope or deal with significant medical emergencies and breached its duty of ordinary reasonable care in its representations to the public and to the Plaintiff herein all of the facts about the limitations in terms of quality and the ability of the system onboard to cope or deal with significant and progressive medical conditions.

33.     Both the Defendant cruise line and shipboard physicians and medical staff failed to warn the Plaintiff that the medical center and staff were not equipped to properly handle the Plaintiff's condition. The cruise line knew or should have known to warn the Plaintiff directly or through the shipboard physician and medical staff as to the medical center's, physician, and medical staff's limitations to provide medical services due to competency, training and experience, medical supplies, medical equipment, and medications to passengers. The cruise line knew or should have known to warn passengers prior to boarding its ships as to the limitations of the medical center's, physician's and medical staff's ability to provide medical services due to

competency, training and experience, medical supplies, medical equipment, and medications to passengers.

34.     At all times material, the Defendant, RCCL, held out its medical staff, including its doctors and nurses, as its employees who work in RCCL's "medical centers" on the vessel. The Defendant, RCCL, promotes its medical staff and represents them as being their employees through brochures, internet advertising, and communications to passengers on the vessel.  That RCCL held out its staff, including Amanda Saunders, M.D. and Jane Doe, R.N., as being its direct employees or its actual agents.

35.     That the Defendant, RCCL, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce elderly passengers such as the Plaintiff to cruise on its ships.

36.     That RCCL manifested to the Plaintiff in this case that its medical staff, including Jane Doe, R.N. and Dr. Saunders,  were acting as its employees and/or actual or apparent agents in various ways, including but not limited to the following:

(a)     the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

(b)     that the "medical centers" are owned and operated by RCCL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

(c)     that the passenger is billed directly by RCCL through the passengers' Sign and Sail Card, whereas the "medical staff', including the doctor and nurse, are paid salaries by RCCL, to work in the "medical centers"; and

(d)     that RCCL has the right to hire and fire the physicians and nurses,

10

including Dr. Saunders.

37.    The medical staff in this case, including Dr. Saunders and Jane Doe, R.N., were required by RCCL to wear RCCL uniforms which include name tags, and which display the RCCL name and logo.

38.    Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line.  The Defendant through its actions and conduct represents to its  cruise passengers including, but not limited to the Plaintiff herein, that the shipboard physicians  and medical staff work for the benefit of the Defendant. These actions and conduct of the cruise  line include but are not limited to the following:

    a.   The Defendant controls cruise line physicians attire, which includes, at times, a  uniform with epaulettes and stripes similar to other crewmembers;

    b.   The Defendant cruise line offers physicians benefits including senior officer status,  round-trip transportation from residence  to the ship, uniforms, meals, private  furnished cabins  with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

    c.   The Defendant cruise line requires that the ship's physicians sail with the ship;

    d.   The Defendant cruise line provides the onboard Medical Center;

    e.   The Defendant cruise line allows and requires the ship's physicians to operate and  provide services out of the ship's Medical Center which is provided by the cruise  line and which is equipped by the cruise line;

11

     f.   The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

     g.   The ship's physicians represented themselves to passengers that they are employees of Defendant, RCCL;

     h.   The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

     i.   The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships; and

     j.   The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

39.    The ship's physician is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

40.    Both the ship's doctor and the nurses were held out to the passengers by RCCL as members of the ship's crew.

41.    The Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

42.    The cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

43.    Both the ship's doctor and nurses are permitted to eat with the ship's crew.

44.    The ship's physician and nurse provide services in the ship's "medical centers"

12

and the Plaintiff had no alternative to going to the ship's medical center to be seen for his symptoms.

45.     At the time of Plaintiff's illness, the Plaintiff was seen, examined and treated by the ship's nurse and/or physician.

46.     Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

47.     MR. PUCHALSKI relied to his detriment on his belief that the physician and nurse were direct employees or actual agents of the Defendant in that MR. PUCHALSKI followed the advice of RCCL's nurse and/or physician who did not seek any further medical testing or evaluation while the ship was in Juneau, by not requesting a transfer ashore.

48.     As a result of the Plaintiff's reliance upon the ship's medical staff, the Plaintiff was not properly treated and, in fact was mistreated, such that he collapsed, and that subsequent medical treatment and intervention was untimely, and he died.

49.     That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., a Liberian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and MR. PUCHALSKI's survivors, Cheryl Puchalski, Laura Goodloe, and Clifford Puchalski, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## COUNT III: NEGLIGENT HIRING, RETENTION AND TRAINING BY RCCL

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

50.     It is foreseeable to the Defendant, RCCL, that passengers like the Plaintiff will fall ill on their vessels, and present to RCCL's medical center for treatment.

51.     It is foreseeable that such injuries would occur and require proper examination and evaluation, including appropriate triage in the event that the condition would require shore side examination, diagnostic testing, evaluation, and treatment.

52.     At all times material, the Defendant, RCCL, owed a duty to use reasonable care in hiring and/or retention of all medical personnel, including the ship's doctor and nurse. The Defendant had a duty to hire medical personnel who were adequately qualified, trained and experienced to work aboard ships and to conduct examinations and evaluate medical conditions which would require treatment aboard ships or which might require further evaluations and/or treatments by shore side facilities and/or shore side physicians.

53.     At the time of Plaintiff's illness, the vessel was still in the Port of Juneau, Alaska and the Plaintiff could have easily been referred ashore for proper examination, evaluation and treatment.

54.     The Defendant, RCCL, breached its duty of care with regard to hiring and/or retention of the ship's doctor and nurses in one or more of the following manner:

(a)     the Defendant negligently failed to conduct an appropriate investigation into the backgrounds of the doctor and nurse to determine if they were qualified to practice emergency medicine and to handle examinations and evaluations of MR. PUCHALSKI's symptoms/condition;

14

(b)     the Defendant negligently failed to hire medical personnel, including the doctor and nurse, that had appropriate training and/or experience in emergency medicine, including evaluation of symptoms/conditions such as MR. PUCHALSKI's presented with;

(c)     the Defendant negligently failed to hire medical personnel which were qualified and/or sufficiently trained and experienced in the use of diagnostic equipment that was aboard the vessel, which could have been used for diagnostic testing and evaluation of Plaintiff's symptoms/conditions such as MR. PUCHALSKI's presented with;

(d)     the Defendant negligently failed to provide appropriate training and procedures to the doctor and nurse for use of the ship's equipment for diagnostic testing;

(e)     the Defendant negligently retained the doctor and nurse without providing appropriate training and procedures for triage and referral to shore side facilities or physician.

55.     As a direct and proximate result of the negligence of the Defendant, the Plaintiff did not receive competent medical care, as a result of which his condition deteriorated and he passed away.

WHEREFORE, the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., a Liberian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and MR. PUCHALSKI's survivors, Cheryl Puchalski, Laura Goodloe, and Clifford

Puchalski, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

**COUNT IV**
**NEGLIGENT FAILURE TO EVACUATE**
**PASSENGER AND/OR EVACUATE PASSENGER TIMELY AND**
**APPROPRIATELY – DIRECT LIABILITY OF THE CRUISE LINE**

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

56.     This is an action for negligence based on RCCL's failure to evacuate its passenger MR. PUCHALSKI who was in need of urgent or emergent medical care. The cruise line failed to arrange for this evacuation, or advise MR. PUCHALSKI that transfer to shoreside medical provider was necessary. The cruise line personnel also failed to timely evacuate MR. PUCHALSKI in order for him to receive urgent or emergent medical care ashore after he collapsed.

57.     RCCL through the ship's command and through the home office owes a duty to provide reasonable and proper transportation of its passengers, including MR. PUCHALSKI, who are suffering from a significant medical problem.  The duty is to provide such transportation (a) to get that passenger to the nearest hospital when the passenger is on land if time is of the essence or critical in the medical treatment of the passenger; (b) by evacuating the passenger off of the ship, particularly where, as in this case, the vessel was located in an American port.

58.     RCCL through the ship's command and through the home office breached its duty to MR. PUCHALSKI to provide reasonable and proper transportation of MR. PUCHALSKI who, due to RCCL's negligent treatment, was suffering from a significant medical problem.  The Defendant RCCL breached its duty by failing to transport the Plaintiff to a nearby hospital upon

16

the Plaintiff's presentation to the ship's infirmary, and certainly immediately upon his collapse; failing to transport the Plaintiff to the nearest hospital; and failing to properly advise the closest Medical Facility and Emergent Transport the emergent nature of the Plaintiff's deteriorating condition.

59.     Once it was apparent that the Plaintiff's condition was worsening due to the Defendant RCCL's initial negligence the measures of transporting the Plaintiff off of the ship should have been taken to minimize further damage to the Plaintiff.

60.     RCCL knew of Plaintiff's medical emergency upon his collapse because RCCL's Medical Staff were advised of the Plaintiff's condition by his son, Clifford Puchalski, as well as their own opportunity to evaluate the Plaintiff's physical condition.  RCCL further knew or should have known of MR. PUCHALSKI's health emergency because MR. PUCHALSKI was under the care of RCCL's apparent agents, Dr. Saunders and other RCCL Medical Center employees.  Such care was provided to MR. PUCHALSKI inside the onboard Medical Center which is owned and outfitted with supplies by Defendant, RCCL.

61.     As a direct result of the Defendant's prolonged delay to evacuate MR. PUCHALSKI off the vessel on a timely basis for urgent or emergent basis, the shipboard physicians and medical personnel continued in providing faulty medical care which did not comport with the standard of care and thereby continued the prolonged delay of proper medical treatment.  MR. PUCHALSKI's condition therefore deteriorated and he eventually expired, all of which could have been prevented.

62.     The Defendant's negligence proximately caused MR. PUCHALSKI's death.

WHEREFORE, the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, demands judgment against the Defendant, ROYAL

CARIBBEAN CRUISES, LTD., a Liberian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and MR. PUCHALSKI's survivors, Cheryl Puchalski, Laura Goodloe, and Clifford Puchalski, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

Dated March 23, 2018.

Todd R. Michaels, Esq.
THE HAGGARD LAW FIRM
*Counsel for Plaintiff*
330 Alhambra Circle
Coral Gables, Florida 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154
Emal: tjm@haggardlawfirm.com

BY:  /s/ *Todd J. Michaels*
       TODD J. MICHAELS
       Florida Bar No. 568597

Philip D. Parrish, Esq.
PHILIP D. PARRISH, P.A.
*Counsel for Plaintiff*
7301 S.W. 57 Court, Suite 430
South Miami, Florida 33143
Telephone: (305) 670-5550
Facsimile: (305) 775-5155
Email: phil@parrishappeals.com
      betty@parrishappeals.com

By: /s/ *Philip D. Parrish*
       PHILIP D. PARRISH
       Florida Bar No. 541877