UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Miami Division

CASE NO.: 18-CV-21125-CMA

LAURA GOODLOE, as Personal
Representative of the Estate of RICHARD
J. PUCHALSKI,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES,
LTD., A Liberian Corporation,

    Defendant
_____/

## AMENDED COMPLAINT

COMES NOW the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, by and through undersigned counsel and sues the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, and alleges as follows:

GENERAL ALLEGATIONS

1.    This is an action for damages which exceed Seventy-Five Thousand ($75,000.00) Dollars, and the court has diversity jurisdiction pursuant to *28 USC §1332.*

2.    The Plaintiff, LAURA GOODLOE, is the daughter of RICHARD J. PUCHALSKI and the duly appointed Personal Representative of the Estate of RICHARD J. PUCHALSKI ("MR. PUCHALSKI"), deceased. Attached hereto and made a part hereof as Exhibit "A" is a copy of the Letters Testamentary issued on May 25, 2017, by the Circuit Court

1

of Kenosha County, Wisconsin.

3.  At all times material the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, was and is a resident and citizen of the State of Illinois. Her mother, Cheryl Puchalski, is Mr. Puchalski's widow and survivor. She is a citizen and resident of Wisconsin. Clifford Puchalski is Mr. Puchalski's son, and a citizen of Texas.

4.  At all times material, the Defendant, ROYAL CARIBBEAN CRUISES, LTD., A LIBERIAN CORPORATION, hereafter referred to as "RCCL", was and is a foreign corporation with its principal place of business in Miami-Dade County, Florida.

5.  At all times material, Jane Doe, R.N., was a nurse employee, or agent of the Defendant, RCCL, and was at all times material acting within the scope and course of her employment or agency with RCCL.

6.  At all times material, Dr. Amanda Saunders, a citizen of South Africa, was an employee or agent of the Defendant, RCCL, as its ship's physician and was at all times material acting within the scope and course of her employment or agency with RCCL.

7.  At all times material, the Defendant, RCCL, was the owner and/or operator of the cruise ship EXPLORER OF THE SEAS.

8.  On July 31, 2016, the decedent, MR. PUCHALSKI, was a passenger on the EXPLORER OF THE SEAS, which was docked in the port of Juneau, Alaska.

9.  On that date, MR. PUCHALSKI presented to the ship's Infirmary at or around 10:00 a.m.

10. MR. PUCHALSKI presented to the clinic with shortness of breath. He was evaluated by Dr. Saunders who ordered an EKG which revealed a "septal infarction, age

undetermined." The ship's physician prescribed and dispensed some medications, including intravenous Metoprolol to MR. PUCHALSKI. The ship's physician did not contact any family members or keep MR. PUCHALSKI for further testing or evaluation, or, as she should have done, immediately transfer him to a hospital ashore.

11. Relying on the advice of the ship's medical personnel, MR. PUCHALSKI returned to his cabin rather than seeking further care ashore at a hospital.

12. Approximately a half-hour after MR. PUCHALSKI returned to his cabin, his son (Clifford Puchalski) returned to the cabin and found his father sitting on his bed. MR. PUCHALSKI appeared dizzy and disoriented. MR. PUCHALSKI rose to go to the bathroom, and collapsed. Clifford called the ship's emergency number. Approximately, 10 minutes later two nurses arrived. They were unable to lift MR. PUCHALSKI or perform any medical treatment to him. Thereafter, the ship announced an emergency code over the intercom, and additional ship personnel responded to the cabin. After unsuccessfully attempting to revive MR. PUCHALSKI, he was transported to the RCCL on-board medical center.

13. When MR. PUCHALSKI arrived at the ship's medical center there was an additional significant delay before he was transferred ashore.

14. Finally, late in the afternoon, the ship's physician ordered a transfer to Bartlett Regional Hospital ashore in Juneau for further care and treatment. After assessment there he was airlifted to an ICU in Anchorage.

15. By the time MR. PUCHALSKI arrived at the ICU in Anchorage, Alaska during the early evening hours, his condition had deteriorated to the extent that he was not salvageable. He expired on August 4, 2016.

16. RICHARD J. PUCHALSKI is survived by his widow, Cheryl Puchalski, who was

dependent upon him for financial support and services until his death. He is also survived by his daughter, LAURA GOODLOE, and son CLIFFORD PUCHALSKI.

### COUNT I: NEGLIGENT MEDICAL CARE AND TREATMENT VIA EMPLOYEES OR ACTUAL AGENTS

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

17. The Defendant owed a duty to RICHARD J. PUCHALSKI to provide prompt and appropriate medical care upon his presentation to the ship's infirmary on July 31, 2016, and thereafter when he collapsed in his cabin.

18. The Defendant, RCCL, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

   (a) in failing to properly assess the condition of RICHARD J. PUCHALSKI;

   (b) in failing to timely diagnose and appropriately treat MR. PUCHALSKI;

   (c) in failing to order appropriate diagnostic tests to further assess his condition;

   (d) in failing to obtain consultations with appropriate specialists;

   (e) in failing to properly monitor the patient;

   (f) in failing immediately to evacuate the patient from the vessel for appropriate and life-saving care in a timely manner;

   (g) in deviating from the standard of care for patients in MR. PUCHALSKI's circumstances; and

   (h) in prescribing and dispensing contra-indicated medicines which proximately caused MR. PUCHALSKI's death.

19. RCCL acknowledged through its hiring and holding out of its medical personnel, including Dr. Saunders, and all nurses, that they acted for RCCL; Dr. Saunders and the nurses manifested the acceptance of that undertaking by providing care to RCCL's passengers in

RCCL's medical center, and RCCL controlled or had the right to control the medical personnel's actions, as more fully set forth *infra* and *supra*.

20.   RCCL directly paid the medical personnel for their work in the ship's medical center.

21.   The medical center was created, owned and operated by RCCL.

22.   RCCL hired and had the right to fire its medical personnel, including Dr. Saunders.

23.   As a direct and proximate result of the negligence of the Defendant through its employees/agents, as described above, the Plaintiff died.

24.   Had RICHARD J. PUCHALSKI received the appropriate care and treatment, he more likely than not would have survived.

25.   As a result of the negligence of the Defendant, through its employees/agents as heretofore described, the Estate of RICHARD J. PUCHALSKI has become obligated to pay significant medical bills and other expenses.

26.   As a result of the negligence of the Defendant, as heretofore described, Cheryl Puchalski, the widow of the decedent, has lost his social security, medical insurance, and the value of his services and incurred expenses for medical care, funeral services and interment.

27.   The Defendant's negligence proximately caused MR. PUCHALSKI's death.

WHEREFORE, the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., a Liberian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and MR. PUCHALSKI's survivors, Cheryl Puchalski, Laura Goodloe, and Clifford

Puchalski, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## COUNT II: NEGLIGENCE (VICARIOUS LIABILITY OF RCCL BASED UPON APPARENT AGENCY)

Plaintiff readopts and realleges each and every allegation contained in paragraphs 1 through 16 as though fully set forth herein, and further alleges as follows:

28. The Defendant owed a duty to RICHARD J. PUCHALSKI to provide prompt and appropriate medical care upon his presentation to the ship's infirmary on July 31, 2016, and thereafter when he collapsed in his cabin.

29. The Defendant, RCCL, by and through the acts of its employees or agents, including medical personnel, was negligent, in one or more of the following ways:

    (a) in failing to properly assess the condition of RICHARD J. PUCHALSKI;

    (b) in failing to timely diagnose and appropriately treat MR. PUCHALSKI;

    (c) in failing to order appropriate diagnostic tests to further assess his condition;

    (d) in failing to obtain consultations with appropriate specialists;

    (e) in failing to properly monitor the patient;

    (f) in failing immediately to evacuate the patient from the vessel for appropriate and life-saving care in a timely manner;

    (g) in deviating from the standard of care for patients in MR. PUCHALSKI's circumstances; and

    (h) in prescribing and dispensing contra-indicated medicines which proximately caused MR. PUCHALSKI's death.

30. At all times material, the Defendant, RCCL, held out its medical staff, including its doctors and nurses, as its apparent agents who work in RCCL's "medical centers" on the vessel. The Defendant, RCCL, promotes its medical staff and represents them as being their

6

apparent agents through brochures, internet advertising, and communications to passengers on the vessel. That RCCL held out its staff, including Amanda Saunders, M.D. and Jane Doe, R.N., as being its direct employees or its actual agents.

31. That the Defendant, RCCL, promotes the idea that the medical staff who work in its "medical centers" are its apparent agents as part of a marketing tool to induce elderly passengers such as the Plaintiff to cruise on its ships.

32. That RCCL manifested to the Plaintiff and his family in this case that its medical staff, including Jane Doe, R.N. and Dr. Saunders, were acting as its apparent agents in various ways, including but not limited to the following:

    (a)    the doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

    (b)    that the "medical centers" are owned and operated by RCCL, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

    (c)    that the passenger is billed directly by RCCL through the passengers' Sign and Sail Card, whereas the "medical staff', including the doctor and nurse, are paid salaries by RCCL, to work in the "medical centers"; and

    (d)    that RCCL has the right to hire and fire the physicians and nurses, including Dr. Saunders.

33. The medical staff in this case, including Dr. Saunders and Jane Doe, R.N., were required by RCCL to wear RCCL uniforms which include name tags, and which display the RCCL name and logo.

34.     Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line. The Defendant through its actions and conduct represents to its cruise passengers including, but not limited to the Plaintiff herein and his family, that the shipboard physicians and medical staff work for the benefit of the Defendant. These actions and conduct of the cruise line include but are not limited to the following:

(a) The Defendant controls cruise line physicians attire, which includes, at times, a uniform with epaulettes and stripes similar to other crewmembers;

(b) The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

(c) The Defendant cruise line requires that the ship's physicians sail with the ship;

(d) The Defendant cruise line provides the onboard Medical Center;

(e) The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

(f) The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sail and Sign Account;

  (g) The ship's physicians represented themselves to passengers that they are employees of Defendant, RCCL;

  (h) The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

  (i) The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships; and

  (j) The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies.

35.  The ship's physician is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

36.  Both the ship's doctor and the nurses were held out to the passengers by RCCL as members of the ship's crew.

37.  The Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

38.  The cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

39.  Both the ship's doctor and nurses are permitted to eat with the ship's crew.

40.  The ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff had no alternative to going to the ship's medical center to be seen for his symptoms.

41.  At the time of Plaintiff's illness, the Plaintiff was seen, examined and treated by the ship's nurse and/or physician.

42. Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

43. MR. PUCHALSKI and his family relied to their detriment on their belief that the physician and nurse were direct employees or actual agents of the Defendant in that MR. PUCHALSKI followed the advice of RCCL's nurse and/or physician and did not seek any further medical testing or evaluation while the ship was in Juneau, by not requesting a transfer ashore. MR. PUCHALSKI would not have followed the advice of the ship's medical personnel had he suspected they were not the agents of RCCL.

44. As a result of the Plaintiff's reliance upon the ship's medical staff, MR. PUCHALSKI was not properly treated and, in fact was provided contra-indicated treatment, such that he collapsed, and that subsequent medical treatment and intervention was untimely, and he died.

45. That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

WHEREFORE, the Plaintiff, LAURA GOODLOE, as Personal Representative of the Estate of RICHARD J. PUCHALSKI, demands judgment against the Defendant, ROYAL CARIBBEAN CRUISES, LTD., a Liberian Corporation, for compensatory damages, including pre-judgment interest, costs, and all damages allowable by maritime and state law on behalf of the Estate and MR. PUCHALSKI's survivors, Cheryl Puchalski, Laura Goodloe, and Clifford Puchalski, and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

Dated May 31, 2018.

Todd R. Michaels, Esq.
THE HAGGARD LAW FIRM
*Counsel for Plaintiff*
330 Alhambra Circle
Coral Gables, Florida 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154
Emal: tjm@haggardlawfirm.com

BY:  /s/ *Todd J. Michaels*
     TODD J. MICHAELS
     Florida Bar No. 568597

Philip D. Parrish, Esq.
PHILIP D. PARRISH, P.A.
*Counsel for Plaintiff*
7301 S.W. 57 Court, Suite 430
South Miami, Florida 33143
Telephone: (305) 670-5550
Facsimile: (305) 775-5155
Email: phil@parrishappeals.com
     betty@parrishappeals.com

By: */s/ Philip D. Parrish*
     PHILIP D. PARRISH
     Florida Bar No. 541877

## **CERTIFICATE OF SERVICE**

I electronically filed the foregoing with the Clerk of the Court using CM/ECF on this May 31, 2018. I also certify that the foregoing document is being served this date on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Philip D. Parrish*
Philip D. Parrish

## SERVICE LIST

**Philip D. Parrish, Esquire**
Florida Bar No.: 541877
phil@parrishappeals.com
Philip D. Parrish PA
7301 S.W. 57th Court, Suite 430
Miami, FL 33143
Telephone: 305-670-5550
Facsimile: 305-670-5552
*Counsel for Plaintiff*

**Jerry Hamilton, Esquire**
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
**Jonathan H. Dunleavy, Esquire**
Florida Bar No.: 459666
jdunleavy@hamiltonmillerlaw.com
**Elisha M. Sullivan, Esquire**
Florida Bar No.: 57559
esullivan@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, LLP
150 Southeast Second Avenue, Suite 1200
Miami, FL 33131
Telephone: 305-379-3686
Facsimile: 305-379-3690
*Counsel for Defendant*

**Todd J. Michaels, Esquire**
Florida Bar No.: 565897
tjm@haggardlawfirm.com
The Haggard Law Firm
330 Alhambra Circle
Coral Gables, FL 33134
Telephone: 305-446-5700
Facsimile: 305-446-1154
*Counsel for Plaintiff*