UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-cv-21125-CMA

LAURA GOODLOE, as Personal
Representative of the Estate of RICHARD
J. PUCHALSKI,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES,
LTD., A Liberian Corporation,

    Defendant.
_____/

## DEFENDANT'S MOTION FOR STAY OF EXECUTION OF JUDGMENT AND WAIVER OF BOND REQUIREMENT

Defendant Royal Caribbean Cruises Ltd. ("RCL") moves for an Order staying execution of the March 8, 2019, money judgment (ECF No. 153) and waiving the bond requirement pending RCL's post-trial motions and any appeal from that judgment.

RCL has moved for judgment as a matter of law and new trial or, in the alternative, a remittitur within the time prescribed in the Federal Rules of Civil Procedure. If unsuccessful, RCL intends to file an appeal with the Eleventh Circuit.

This Motion should be granted because RCL is and will be financially solvent and clearly capable of paying the judgment, along with any interest, following disposition of post-trial motions and the outcome of any appeal. Requiring RCL to post a bond is unnecessary and a waste of money.

In the alternative, should the Court require RCL to post security, RCL requests the Court allow for a letter of undertaking from RCL's protection and indemnity club, Steamship Mutual. Should the Court require a bond, RCL requests the Court set an amount lower than normally required. RCL also moves for a temporary stay to provide the time to obtain the letter of undertaking or bond if required.

## Memorandum of Law & Analysis

### A.     Applicable standard

Courts have discretion to stay execution of a judgment without requiring a bond. *See, e.g., Arban v. West Publishing Corp.*, 345 F.3d 390, 409 (6th Cir. 2003) (affirming district court's stay of judgment without bond); *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 17 (1st Cir. 2002) ("The nature and the amount of the bond is entrusted to the discretion of the trial court."); *Federal Prescription Serv. v. Am. Pharm. Ass'n*, 636 F.2d 755 (D.C. Cir. 1980).

Posting the bond is not mandatory where "the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money" and there exists "vast disparity" between the amount of the judgment and the moving party's annual revenue. *Arban.* 345 F.3d at 409; *Johnson v. City of Memphis,* No. 00-2608, 2016 U.S. Dist. LEXIS 167182 (W.D. Tenn. Dec. 5, 2016).

District courts across the country routinely waive the bond requirement for clearly financially-solvent parties:

- *Guzman v. Boeing Co.*, No. 13-12615, 2019 U.S. Dist. LEXIS 18858 (D. Mass. Feb. 6, 2019) – Just a few weeks ago, Boeing's motion to stay the execution of judgment pending its appeal and waiving the bond requirement was granted.

- Boeing provided a copy of its quarterly report, filed with the SEC, which listed Boeing's earnings for the first quarter of 2018. The report reflected that Boeing's net earnings exceeded $2 billion, "indicating that the defendant would readily be able to pay the judgment if affirmed on appeal." *Id.* at *22.

- *New York v. Pataki*, 188 F. Supp. 2d 223 (N.D.NY 2002) – The court waived the bond requirement for stay of judgment of $247,911,999.42 against the State.

- *Exxon Corp. v. Esso Worker's Union, Inc.*, 963 F. Supp. 58, 60 (D. Mass. 1997) – The court waived the bond requirement because "Exxon's solvency and clear ability to satisfy the judgment if affirmed on appeal militate in favor of waiving the customary bond requirement."

- *In re Oil Spill by the Amoco Cadiz*, 744 F. Supp. 848 (N.D. Ill. 1990) – The court waived the bond requirement where Amoco's "net income for [last] quarter was almost 3 times the amount of [] liability." *Id.* at 850.

- *Federal Prescription Serv.*, 636 F.2d 755 – The court waived the bond for an award of $102,000 because the judgment debtor was a longtime District resident with a documented net worth of $4.8 million.

**B.  RCL's ability to pay the judgment following post-trial motions and any appeal is sufficiently guaranteed to warrant waiver of the supersedeas bond requirement.**

RCL's total asset value, revenue, and net income are well-documented and publicly-available, and amount to significantly greater figures than the judgment against it.[1] RCL's total asset value in 2018 was nearly $28 billion, revenue was approximately $9.49 billion, and net income was in excess of $1.8 billion. (*See* Key Statistics, Current Financial Information, https://www.rclinvestor.com/financial-info/key-statistics/, last visited Mar. 21, 2019, and Ex. "A" at p. F-5, 10-K filed with

---

[1]  Should the Court require further financial information, RCL would be happy to provide.

the SEC). Clearly, there is a vast disparity between the judgment amount and RCL's annual revenue (the judgment constitutes just about 0.035% of RCL's revenue). As a result, RCL's ability to pay this judgment is clear and beyond doubt, and therefore, posting a bond will be "a waste of money" and will provide no additional protection of Plaintiff's interests. *Acevedo-Garcia*, 296 F.3d at 17.

Likewise, any argument by Plaintiff that RCL's ability to pay this judgment may change following disposition of post-trial motions or the outcome of an appeal is farfetched and speculative. *See In re Oil Spill by the Amoco Cadiz*, 744 F. Supp. at 851, n.2 (finding the plaintiff's argument that Amoco may suffer some unforeseen financial disaster to be "too speculative to merit consideration -- particularly where the plaintiffs have not pointed to anything looming on the horizon which is reasonably likely to send Amoco spiraling into bankruptcy"). To the contrary, there is absolutely no danger of insolvency or any other issues that may jeopardize execution of the judgment. RCL, in business more than 50 years, is a:

> global cruise vacation company that controls and operates four global brands: Royal Caribbean International, Celebrity Cruises, Azamara Club Cruises and Silversea Cruises. [RCL is] also a 50% joint venture owner of the German brand TUI Cruises and a 49% shareholder in the Spanish brand Pullmantur Cruceros. Together, these brands operate a combined total of 60 ships with an additional 16 on order.

(*See* Investor Relations, https://www.rclinvestor.com/, last visited Mar. 21, 2019). RCL is a growing company with plans to expand its fleet through 2024, and will maintain the same degree of solvency during the post-judgment period. (Fleet expansion projects, https://www.rclinvestor.com/financial-info/key-statistics/, last

visited Mar. 21, 2019; *see also* Feb. 18, 2019, Press Release "Royal Caribbean Order Sixth Oasis-Class Vessel, https://www.rclinvestor.com/press-releases/release/?id=1396). As explained in RCL's Annual Report filed with the SEC (*see* Ex. "A," 10-K at pp. 1, 3),

> [RCL] believe[s] cruising continues to be a popular vacation choice due to its inherent value, extensive itineraries and variety of shipboard and shoreside activities. In addition, we believe our brands are well-positioned globally and possess the ability to attract a wide range of guests by appealing to multiple customer bases allowing our global sourcing to be well diversified.
>
> ***
>
> We believe our Global Brands possess the versatility to enter multiple cruise market segments within the cruise vacation industry. Although each of our Global Brands has its own marketing style, as well as ships and crews of various sizes, the nature of the products sold and services delivered by our Global Brands share a common base (i.e., the sale and provision of cruise vacations). Our Global Brands also have similar itineraries as well as similar cost and revenue components. In addition, our Global Brands source passengers from similar markets around the world and operate in similar economic environments with a significant degree of commercial overlap. As a result, we strategically manage our Global Brands as a single business with the ultimate objective of maximizing long-term shareholder value.
>
> ***
>
> Cruising is considered a well-established vacation sector in the North American and European markets and a developing sector in several other emerging markets. Industry data indicates that market penetration rates are still low and that a significant portion of cruise guests carried are first-time cruisers. We believe this presents an opportunity for long-term growth and a potential for increased profitability.

5

Also, RCL addresses "cost efficiency, operating expenditures and adequate cash and liquidity" in its 10-K at page 7:

> We have adopted a number of strategies to control our operating costs and will continue to do so in 2019. For example, we have adopted numerous initiatives to reduce energy consumption and, by extension, fuel costs. These include the design of more energy efficient ships as well as the implementation of more efficient hardware, including improvements in operations and voyage planning as well as improvements to the propulsion, machinery, HVAC and lighting systems. The overall impact of these efforts has resulted in an approximate 30% improvement in energy efficiency from 2005 through 2018 and we believe that our energy consumption per guest is currently the lowest in the cruise industry. In order to sustain our competitive advantage, we will continue to seek to lead with innovative technologies and commit to achieve our short and long-term sustainability goals. We are focused on maintaining a strong liquidity position, investment grade credit metrics and a balanced debt maturity profile. We believe these strategies enhance our ability to achieve our overall goal of maximizing our long-term shareholder value.

Further, like Amoco in *In re Oil Spill by the Amoco Cadiz*, 744 F. Supp. at 851, n.2, RCL would be amenable to submitting periodic financial reports filed with the SEC so that its financial health can be monitored by Plaintiff and the Court should such a remote contingency materialize.

Additionally, nothing is complex about a potential collection process. If RCL does not prevail in its post-judgment motions or appeal, RCL will pay the judgment as required under the law. RCL can disburse the funds within a short time if judgment is affirmed. Also, it is not disputed that much of RCL's assets are located in this country (within Plaintiff's reach).

6

**HAMILTON, MILLER & BIRTHISEL** LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131 · TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

The waiver of the bond requirement would not cause Plaintiff to sustain any prejudice. To this point, RCL's size, stability (RCL has been in business since 1968), growth plans, willingness to provide periodic SEC filings to Plaintiff and the Court during the pendency of post-trial motions and a potential appeal, demonstrate there is no risk a judgment following the resolution of the appeal is uncollectible. The facts in this Motion and supporting documentation eliminate the concerns that otherwise favor posting a bond—RCL shows it has a present financial ability to pay the money judgment and has a secure plan by way of expansion and cost savings to foster growth and maintain the same or a higher degree of solvency during the post-judgment period. RCL therefore respectfully asks the Court stay execution of the judgment pending the outcome of post-trial motions and any appeal requiring no bond.

**C.     If the Court requires RCL to post security, RCL moves to allow for issuance of a letter of undertaking in lieu of a supersedeas bond.**

Under the general maritime law of the United States, letters of undertaking have long been recognized as an acceptable means of warranting payment of damage awards. *See, e.g., Maritime Antares S.A. v. M/T ESSI CAMILLA*, 633 F. Supp. 694, 695 (E.D. Va. 1986) (finding letter of undertaking to be adequate security to prevent re-arrest of vessel—"letter of undertaking provides an equally acceptable means of warranting payment of damage awards"); *U.S. v. MARUNAKA MARU NO. 88*, 559 F. Supp. 1365, 1368 (D. Alaska 1983) (noting that traditionally admiralty courts have allowed letters of undertaking to serve as a substitute for the vessel). Courts routinely approve of the use of letters of undertaking as adequate

7

HAMILTON, MILLER & BIRTHISEL LLP
150 SOUTHEAST SECOND AVENUE, SUITE 1200 · MIAMI, FLORIDA 33131 · TELEPHONE: 305-379-3686 · FACSIMILE: 305-379-3690

and proper security. *E.g. In re Petition of Slobodna Plovidba*, 1987 A.M.C. 2209 (W.D. Mich. 1987) (accepting letter of undertaking from P&I Club in lieu of bond); *Matter of Compagnina Naviera Marasia, S.A. Atlantico*, 466 F. Supp. 900 (S.D.N.Y. 1979) (approving as security a letter of undertaking in the form of *ad interim* stipulation executed on behalf of a British insurance association). For example, in *Complaint of Dammers & Vanderheide & Scheepvart Maats Christina B.V.*, 836 F.2d 750, 753 n.2 (2d Cir. 1988), a shipowner offered security in the form of a letter of undertaking. The shipowner's insurance company agreed to assume liability up to the stipulated value of the shipowner of $7,671,000, and the court approved the use of the letter as security. *Id.*

Here, a letter of undertaking from RCL's protection and indemnity club, Steamship Mutual,[2] will adequately serve as a guarantee of payment for the judgment. Proceeding in this manner will cause savings. *See In re Compagnina Naviera Marasia, S.A. Atlantico*, 466 F. Supp. at 902-903 (noting that devices that decrease the cost of litigation are to be encouraged). Maritime law recognizes that a letter of undertaking will provide adequate assurance and security of Plaintiff's judgment. RCL will proffer a letter of undertaking for the Court's approval upon a finding by the Court that a letter of undertaking needs to be posted by RCL.

---

[2] "Steamship Mutual's aim is to provide a comprehensive high quality P&I service backed by sound underwriting and strong reserves. The Managers, led by Stephen Martin, are determined to ensure that these objectives continue to be met. Steamship Mutual is one of the largest and most diverse P&I Clubs in the world, and a member of the International Group of P&I Clubs participating in the International Group Pool." (About us, https://www.steamshipmutual.com/About-Us/AboutSSM.htm, last visited Apr. 1, 2019).

**D.     Should the Court require posting of a bond, RCL respectfully requests the Court set an amount lower than that normally required.**

Should the Court deny RCL's request to waive the bond requirement entirely, RCL asks that, given its financial condition, the Court relax the requirement of Local Rule 62.1 so the required bond be for an amount less than "110% of the judgment." For the same reasons that no bond is necessary, a bond in an amount less than that normally required by the Local Rules would be sufficient.

**E.     Should the Court require a letter of undertaking or posting of a bond, RCL respectfully requests the Court grant a temporary stay to provide the time to obtain the letter of undertaking or bond.**

Should a letter of undertaking or bond be required, RCL respectfully asks the Court enter a stay of execution for a reasonable period following disposition of this Motion for RCL to obtain and submit a letter of undertaking or bond in the ordered amount.

## Conclusion and Request for Relief

RCL respectfully requests this Court enter an order (1) staying execution of the judgment pending disposition of post-trial motions and final outcome of any appeal and (2) waiving the bond requirement.

In the alternative, RCL requests it be allowed to furnish a letter of undertaking or that the Court determine an appropriate amount for the bond less than that required by the Local Rules, and order a temporary stay of execution during the period in which the letter of undertaking or bond is obtained and approved by the Court.

RCL further requests Plaintiff be prohibited from taking any action to execute on the judgment pending the disposition of this Motion, and the filing of any letter of undertaking or supercedeas bond pursuant to this Court's direction.

### Certificate of Good Faith Conference

The undersigned certifies they have conferred with counsel for Plaintiff concerning the relief sought, and Plaintiff opposes the Motion.

Respectfully Submitted,

/s/ *Jerry Hamilton*
Jerry D. Hamilton, Esq.
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
Jonathan H. Dunleavy, Esq.
Florida Bar No. 459666
jdunleavy@hamiltonmillerlaw.com
Tyler J. Tanner, Esq.
Florida Bar No. 84737
ttanner@hamiltonmillerlaw.com
Michael J. Dono
Florida Bar No. 0576492
mdono@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
150 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **April 5, 2019**, I certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List by transmission of Electronic Service.

/s/ *Jerry Hamilton*
Jerry D. Hamilton

## SERVICE LIST

Philip D. Parrish, Esq.
Florida Bar No.: 541877
phil@parrishappeals.com
Philip D. Parrish PA
7301 SW 57th Ct, Suite 430
Miami, FL 33143
Telephone: (305) 670-5550
Facsimile: (305) 670-5552
*Attorneys for Plaintiff*

Todd R. Michaels, Esq.
Florida Bar No.: 568597
tjm@haggardlawfirm.com
The Haggard Law Firm
330 Alhambra Circle
Coral Gables, FL 33134
Telephone: (305) 446-5700
Facsimile: (305) 446-1154
*Attorneys for Plaintiff*

Jerry D. Hamilton, Esq.
Florida Bar No.: 970700
jhamilton@hamiltonmillerlaw.com
Jonathan H. Dunleavy
Florida Bar No. 459666
jdunleavy@hamiltonmillerlaw.com
Tyler J. Tanner, Esq
Florida Bar No. 57559
ttanner@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, LLP
150 Southeast Second Avenue
Suite 1200
Miami, Florida 33131
Telephone:   (305) 379-3686
Facsimile:   (305) 379-3690
*Attorneys for Defendant*